UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL NO. 1643

IN RE: EDUCATIONAL TESTING
       SERVICE PRAXIS                    SECTION: R(5)
       PRINCIPLES OF LEARNING
       AND TEACHING: GRADES
       7-12 LITIGATION                   JUDGE VANCE
                                         MAG. JUDGE CHASEZ

<u>**ORDER AND REASONS**</u>

Plaintiffs move to certify a settlement class in this multidistrict litigation and for preliminary approval of their proposed class settlement.  For the following reasons, the Court GRANTS plaintiffs' motion to certify a class for settlement purposes and GRANTS plaintiffs' motion to appoint class counsel. The Court grants plaintiffs' motion for preliminary approval of the proposed settlement in a separate order.


**I.    BACKGROUND**

**A.    Factual Background**

Defendant Educational Testing Service is a not-for-profit corporation that designs, administers, and scores a wide range of

standardized educational tests.  ETS is the world's largest
private educational testing organization, and it administers over
12 million examinations annually.

Among the educational tests that ETS designs, administers
and scores are the Praxis Series examinations.  The Praxis tests
are a series of tests used by many states in the teacher
licensing process.  Passage of one or more of the Praxis tests is
required for licensing in 39 states and U.S. jurisdictions.  The
Praxis tests are administered six times per year, at 650 test
centers in all 50 states.

This litigation concerns only one of the Praxis series of
tests – the Praxis Principles of Learning and Teaching: Grades 7-
12 (the "PLT: 7-12") test.  The PLT: 7-12 consists of both
multiple choice and short-answer "constructed response" questions
and is designed to evaluate a beginning teacher's knowledge of a
variety of material relevant to teaching students in grades seven
through twelve.  During 2003-2004, 19 states contracted with ETS
to use the PLT: 7-12 as part of their teacher licensing process.
The PLT: 7-12 is also relevant to colleges, universities and
professional organizations as a measure of teaching credentials.
Persons who take the PLT: 7-12 can request that ETS report their
scores directly to various states, colleges, and universities.

ETS incorrectly scored the PLT: 7-12 over the course of nine

2

test administrations between January 2003 and April 2004.
Specifically, when scoring the tests from those nine
administrations, ETS graded the constructive response portion of
the exams more stringently than it should have graded them.  As a
result of this error, approximately 27,000 people who took the
PLT: 7-12 during that time period received a score that was lower
than it would have been had the exams been graded properly.  The
scoring error caused about 4,100 test-takers to receive a "false
failure," *i.e.*, they were notified that they had received a
failing score in at least one state in which their score was
reported, when in fact they should have received a passing score.
The scoring error caused approximately 23,000 other test-takers
to receive passing scores that were lower than they would have
been had the tests been scored correctly.

     After a client state questioned ETS about scoring results
for the PLT: 7-12, ETS began an investigation that ultimately led
it to discover the scoring error.  On or about July 10, 2004, ETS
began to notify affected test-takers by telephone and letter that
they had incorrectly been told that they had failed the PLT: 7-12
test when, after rescoring, they had actually passed the test.
Although ETS re-scored all of the PLT: 7-12 tests taken during
the relevant period, it provided the adjusted scores to only
those people who had received false failures.  ETS did not

3

provide the re-scored results to test-takers whose initially-reported score was sufficient to pass the exam in all of the states to which it was reported.

Plaintiffs allege that ETS's scoring error prevented many test-takers who received a false failing score from obtaining, or from obtaining in a timely manner, their teaching credentials and therefore prevented them from securing or retaining employment as certified teachers.  The scoring error also allegedly delayed some test-takers' completion of bachelor's and/or master's degrees, and it allegedly caused some test-takers to abandon teaching and pursue alternate majors and careers.  Many of those test-takers also retook the PLT: 7-12 and in the process incurred additional registration fees and test preparation expenses. Moreover, some test-takers who initially received a passing score in each of the jurisdictions to which their score was reported were allegedly harmed by having artificially low scores reported to states and institutions.

**B.    Procedural Background**

On December 16, 2004, the Judicial Panel on Multidistrict Litigation transferred 13 actions relating to the PLT: 7-12 scoring error from federal district courts in Pennsylvania, Louisiana and Ohio to this Court under 28 U.S.C. § 1407 for

4

consolidated or coordinated pretrial proceedings.  On January 4, 2005, the Court consolidated those actions for pretrial purposes. A number of additional actions were later consolidated with those cases, and a total of 28 actions are currently consolidated before this Court.  On January 24, 2005, the Court appointed lead and liaison counsel for plaintiffs and directed plaintiffs to file a master complaint.  Plaintiffs filed the master complaint on  March 10, 2005.  ETS then moved to dismiss a number of the claims asserted in the master complaint.  Specifically, ETS moved to dismiss plaintiffs' state law claims for negligence and negligent misrepresentation, as well as plaintiffs' requests for emotional distress and punitive damages on both their contract and tort claims.  ETS also moved to dismiss plaintiffs' claims under the Sherman Act.  The Court ultimately granted ETS's motion to dismiss plaintiffs' Sherman Act claims.  ETS's other motions to dismiss remain pending.

### C.    The Proposed Settlement Class

In November 2005, the parties reached a tentative settlement in an effort to resolve all of the claims relating to the PLT: 7-12 scoring error.  Under the terms of the proposed settlement, ETS would pay $11 million into a settlement fund for the benefit of participating class members who suffered damages as a result

5

of the scoring error.  ETS has also agreed to provide a free score report, purportedly valued at $35, to any class member who did not receive a false failure and requests a score report.  In connection with the proposed settlement, plaintiffs ask the Court to certify a nationwide class consisting of:

> All persons who took the Praxis Principles of Learning and Teaching: Grades 7-12 examination between January 1, 2003 and April 30, 2004.  Specifically excluded from the Class are all persons who have executed full and final releases of their Causes of Action with ETS.

The parties have informed the Court that 41 affected test-takers have executed full and final releases with ETS.

Plaintiffs have proposed four plaintiffs to serve as class representatives:  Kathleen Jones, Paul Perrea, Raffael Billet, and Janet Riehle.  Each of these plaintiffs took the PLT: 7-12 during the relevant time period and received a false failure because of the scoring error.  Moreover, each of the proposed class representatives is a named plaintiff in an action against ETS concerning the scoring error.  Plaintiffs also ask the Court to appoint a number of attorneys as class counsel.

The Court held a hearing on plaintiffs' motions on February 22, 2006.  At that hearing, the plaintiffs explained the process through which the parties arrived at the proposed settlement and responded to the Court's questions concerning both the proposed

6

settlement and plaintiffs' motion for class certification.
Specifically, the plaintiffs' submitted additional information
concerning the geographical breakdown of the putative class
members by state.

## II.  DISCUSSION

### A.  Settlement Classes

The practice of certifying a class of plaintiffs for
settlement purposes only is a common method for resolving mass
litigation.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,
618 (1997) (noting that "the 'settlement only' class has become a
stock device" and stating that "all Federal Circuits recognize
the utility of Rule 23(b)(3) settlement classes"); *see also*
Manual For Complex Litigation (Fourth) § 21.132 (2004)
(discussing settlement classes).  As the Supreme Court made clear
in *Amchem*, however, settlement classes must still satisfy the
requirements of Rule 23(a) and (b).  *Amchem*, 521 U.S. at 621
("Federal courts . . . lack authority to substitute for Rule 23's
certification criteria a standard never adopted--that if a
settlement is 'fair,' then certification is proper.").  Under
*Amchem*, the "settlement-only" status of a class is relevant to
the Rule 23 inquiry, but only to the extent that a district court
faced with a settlement class "need not inquire whether the case,

7

if tried, would present intractable management problems." *Id.* at 620.  Because the parties are not in an adversarial position when they seek approval of a settlement class, other of Rule 23's requirements, such as those foreclosing "unwarranted or overbroad class definitions," require "undiluted, even heightened, attention in the settlement context." *Id.*

Accordingly, before the Court can certify plaintiffs' proposed class in this proposed Rule 23(b)(3) class action, it must be satisfied that the class meets the requirements of both Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and Rule 23(b)(3) (predominance and superiority).

**B.   Rule 23(a)**

1.  *Numerosity*

Class treatment is appropriate only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  The numerosity requirement is ordinarily satisfied if the plaintiff presents some evidence or a reasonable estimate to show that the number of class members is sufficiently large.  *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).  Here, based on their investigation of the case and their review of documents from ETS, plaintiffs' counsel estimates that the class consists of approximately 27,000 people, 4,100 of whom

8

received a false failure.  This number is more than sufficient to satisfy the numerosity requirement.

2.   *Commonality*

Rule 23(a)'s commonality requirement is also met in this case.  Commonality requires only that there be at least one issue of law or fact that is common to the class.  *See James*, 254 F.3d at 570.  Because this litigation is focused on a single scoring error made by a single defendant on a number of administrations of a single standardized examination, the commonality requirement is clearly satisfied.  Moreover, the commonality element is of less importance in a Rule 23(b)(3) class action such as this one because the class must also meet the more stringent predominance requirement of Rule 23(b)(3).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (commonality is "less rigorous than the companion requirements of Rule 23(b)(3)"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 366 (E.D. La. 1997) ("[C]ourts usually do not spend a great deal of time addressing whether common issues exist, but instead focus on the related issue under Rule 23(b)(3) of whether common issues *predominate* over individual ones.").

3.  *Typicality*

The third of Rule 23(a)'s requirements, typicality, considers whether the claims or defenses of the class representatives are typical of the claims of the other class members.  Typicality does not require that the representative plaintiffs' claims be identical to those of the rest of the class.  Rather, typicality requires only that the claims of the proposed class representatives have the same fundamental characteristics as the claims of the class.  *See James*, 254 F.3d at 571 ("'If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'") (quoting 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000)).  In this case, each of the named plaintiffs took the PLT: 7-12 during the relevant time period, and each alleges that he or she received a false failure because of the scoring error.  Moreover, the legal claims asserted by the proposed class representatives are typical of the claims that could be asserted by the other members of the class. The proposed class representatives therefore satisfy the typicality requirement.

4.  *Adequacy of Representation*

Adequacy of representation tests whether the representative

10

plaintiffs are willing and able to actively participate in the litigation to protect the interests of the class and whether proposed class counsel are competent, experienced and zealous advocates for the class. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Rule 23(a)(4) also requires courts to examine whether any conflicts exist between the interests of the representative plaintiffs and the interests of the absent class members. *See id.* at 480-81; *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999).

In their brief in support of class certification, plaintiffs assert that the proposed class representatives are familiar with the facts and circumstances surrounding both the litigation and the proposed settlement. Plaintiffs further assert that the proposed class representatives have taken part in discovery and are willing to take all actions necessary to comply with their responsibilities as class representatives. They also submit affidavits to this effect from each of the proposed class representatives. This is *prima facie* sufficient to establish the proposed class representatives' willingness to participate in the litigation and protect the interests of the class.

Moreover, the Court finds that the interests of the class representatives do not conflict with the interests of the class. The Court notes that the proposed class representatives differ in

one respect from some of the class members, because each of the
proposed class representatives received a false failure, while
many other class members simply received an artificially low, but
passing, score.  This difference does not, however, create a
conflict between the proposed class representatives and the other
class members, and it does not render the proposed class
representatives inadequate.  As noted above, all of the class
members have an identical interest in establishing ETS's
liability for the PLT: 7-12 scoring error, whether or not they
received a false failure.  The only difference between those two
groups of class members relates to the relative difficulty that
each might have in establishing damages.  As the Fifth Circuit
held in *Mullen*, however, differences among plaintiffs concerning
proof of damages "do[] not affect the alignment of their
interests."  *Mullen*, 186 F.3d at 626; *see also Berger*, 257 F.3d
at 480 ("Differences between named plaintiffs and class members
render the named plaintiffs inadequate only where those
differences create conflicts between the named plaintiffs' and
the class members' interests.").

Finally, the Court finds that proposed class counsel are
adequate to represent the class.  The Court has reviewed the
resumes of plaintiffs' proposed settlement class counsel, Dawn
Barrios of Barrios, Kingsdorf, & Casteix, L.L.P., Richard

Arsenault of Neblett, Beard & Arsenault, and Philip Bohrer of
Bohrer Law Firm, L.L.C., and proposed settlement class counsel
have also appeared before the Court at several points in this
litigation.  Counsel possess ample experience in complex
litigation, and the Court is convinced that they have capably and
vigorously represented the interests of the class in this action.
The Court has also reviewed the resumes of the other members of
the plaintiffs' steering committee, Phyllis Brown of Law Offices
of Phyllis Brown, Sherrie Savett of Berger & Montague, Steven
Bell, of Counsel to the Simon Law Firm, and Walter Leger of Leger
& Mestayer.  The Court finds that they are each also sufficiently
able and experienced to represent the interests of the class in
this matter.  Accordingly, the Court finds that the proposed
class representatives and their counsel will adequately represent
the class.

### C.    Rule 23(b)(3)

1.  *Predominance*

The first requirement for a Rule 23(b)(3) class action is
that "the questions of law or fact common to the members of the
class predominate over any questions affecting only individual
members." Fed. R. Civ. P. 23(b)(3).  In their class
certification brief, plaintiffs have identified a significant

13

number of common questions affecting the class, including:
factual questions concerning ETS's conduct in scoring the PLT: 7-
12; the nature and cause of the PLT: 7-12 scoring error; whether
ETS was negligent in improperly scoring the PLT: 7-12; whether
ETS breached its contract with test-takers; whether ETS timely
failed to detect inaccurate scores; and whether ETS owed non-
contractual duties to test-takers.  Although individual issues
exist concerning damages, the Court finds that the number and
significance of the common questions in this litigation supports
a finding of predominance.

　　Moreover, although a number of different states' laws would
apply to the class members' claims, potential variations in state
law do not defeat predominance in this case.  In the non-
settlement context, many courts, including the Fifth Circuit,
have held that variations in state law can undermine the
predominance of common issues.  *See Castano v. Am. Tobacco Co.*,
84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action,
variations in state law may swamp any common issues and defeat
predominance."); *see also Spence v. Glock, GmBH*, 227 F.3d 308,
311 (5th Cir. 2000) (same) (quoting *Castano*, 84 F.3d at 741).
This concern is less pronounced, however, in the context of a
settlement class.  The primary hurdle that the application of
multiple, and possibly varying, state laws poses for satisfying

14

the predominance requirement is one of manageability,[1] an issue
that courts faced with settlement-only classes need not consider
under *Amchem*.  *See In re Warfarin Sodium Antitrust Litig.*, 391
F.3d 516, 529 (3d Cir. 2004) ("[W]hen dealing with variations in
state laws, the same concerns with regards to case manageability
that arise with litigation classes are not present with
settlement classes, and thus those variations are irrelevant to
certification of a settlement class.").

    Absent manageability concerns, the Court finds that any
variations among the applicable state laws do not overwhelm the
predominance of common issues in this case.  Differences in state
law do not prevent a finding of predominance in a settlement
class if they are simply variations on broadly similar legal
principles or if the variations among states fall into a limited
number of predictable patterns.  *See Hanlon*, 150 F.3d at 1022-23
("[T]he idiosyncratic differences between state consumer
protection laws are not sufficiently substantive to predominate

---

    [1]*See, e.g.*, *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010-
11 (3d Cir. 1986) (discussing variations in state laws as a
manageability problem); *In re Ford Motor Co. Vehicle Paint
Litig.*, 182 F.R.D. 214, 224 (E.D. La. 1998) ("[D]ifferences in
state law combined with peculiarities in the facts combine to
make national class treatment unmanageable and unfair."); *see
also Castano*, 84 F.3d at 743-44 (discussing district court's
"duty to determine whether the class action would be manageable
in light of state law variations").

over the shared claims."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (certifying settlement class; "Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."). The issues presented by plaintiffs' claims in this litigation arise under broadly-recognized principles of contract and tort law. The variations among the various states' laws relevant to plaintiffs' claims would in all likelihood generate a small number of predictable outcomes. Further, the claims of the vast majority of the class members would be governed by, at most, a limited number of states' laws. Forty-eight percent of the 27,000 class members, and sixty percent of those who received false failures, took the PLT: 7-12 in one of just four states (Ohio, Pennsylvania, Louisiana and Tennessee). Eighty-four percent of the class, and eighty-nine percent of the false failures, took the exam in one of 13 states, and ninety percent of the class, and ninety-five percent of those who received false failures, took the exam in one of the 19 states that require the PLT: 7-12 for teacher certification.

Given the significant and overarching common legal and factual questions in this litigation, that any variations in

16

state law would fall into small number of predictable categories, and the limited importance of state law variations in the settlement class context, the Court finds that common issues of law and fact predominate.

2.  *Superiority*

The final requirement for a Rule 23(b)(3) class action, superiority, requires a determination that a class action is superior to other methods of adjudicating the dispute.  Factors to be considered in this analysis include: (i) the interests of class members in prosecuting their own actions; (ii) the extent of litigation already commenced by class members; (iii) the desirability of concentrating the claims in one forum; and (iv) the likely difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3).

Each of these factors favors class certification here. First, the value of the average class member's claim is relatively small, particularly among the 23,000 class members who did not receive a false failure.  Thus, the average class member has little incentive to litigate individually against ETS. Second, only a very small fraction of the class has actually instituted suits against ETS (and most of those suits are designated as class actions).  Third, because of the common

17

issues in this case, resolution in a single forum would be beneficial to the class and would promote judicial economy. Finally, as the class is being certified for settlement purposes only, the Court need not consider whether the case would present manageability problems as a class action.  Accordingly, the Court finds that a class action is superior to other methods of adjudication.

As the proposed class satisfies all of the requirements of Rule 23(a) and (b)(3), the Court will grant plaintiffs' motion to certify the class for settlement purposes only.

### D.   Appointment of Class Counsel

Rule 23(g) requires that the Court appoint class counsel who will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).  In appointing class counsel, the Court must consider: (i) counsel's work in investigating and identifying potential claims; (ii) counsel's experience in class actions, complex litigation and litigation involving similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

In their brief in support of class certification, plaintiffs assert that each of plaintiffs' proposed class counsel has been involved in numerous aspects of this litigation.  Though the

Court cannot practically isolate each counsel's role in investigating and prosecuting this action, the record before the Court reveals that on the whole, plaintiffs' counsel have diligently investigated the claims of the class and have prosecuted this litigation in a very professional manner. Further, as discussed *supra*, the Court is satisfied that proposed class counsel possess sufficient knowledge and experience to fairly and adequately represent the class.  The record also reveals that counsel have devoted a significant amount of time and resources to pursuing this litigation.  The Court will therefore grant plaintiffs' motion to appoint class counsel.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS plaintiffs' motion to certify a settlement class in this litigation.  The Court certifies, for settlement purposes only, the following class:

> All persons who took the Praxis Principles of Learning and Teaching: Grades 7-12 examination between January 1, 2003 and April 30, 2004.  Specifically excluded from the Class are all persons who have executed full and final releases of their Causes of Action with ETS.

The Court also GRANTS plaintiffs' motion to appoint class counsel.  Accordingly, Dawn Barrios of Barrios, Kingsdorf, &

19

Casteix, L.L.P., Richard Arsenault of Neblett, Beard & Arsenault, Philip Bohrer of Bohrer Law Firm, L.L.C., Phyllis Brown of Law Offices of Phyllis Brown, Sherrie Savett of Berger & Montague, Steven Bell, of Counsel to the Simon Law Firm, and Walter Leger of Leger & Mestayer are hereby appointed as class counsel.

New Orleans, Louisiana, this <u>13th</u> day of March, 2006.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE